IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| SERGEY IVANOV | ) | |
| and SVETLANA IVANOV, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 101152C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal adjustments Defendant made to their Oregon 2007 and 2008 income tax returns. The focus of the dispute is the deductibility of certain claimed unreimbursed business expenses.

Trial in the matter was held at the Oregon Tax Court on April 20, 2011. Plaintiffs appeared at trial and testified on their own behalf. The court provided Russian-speaking interpreters to aid Plaintiffs with the presentation of their case. Defendant was represented by Darren Johnson (Johnson), an auditor with the Oregon Department of Revenue.

## I. STATEMENT OF FACTS

Plaintiff Sergey Ivanov (Sergey) is a "boilermaker welder" who lived in Gresham, Oregon, during the years at issue.[1] Sergey is, and has been, a member of a local welder's union. Prior to 2007, Sergey worked at a shipyard in Portland.

For the tax years at issue (2007 and 2008), Sergey was a member of two local unions, Boilermakers Locals 500 and 104, and received his work assignments from those organizations. Sergey worked both within and outside the State of Oregon. Plaintiffs contend Sergey worked in

---

[1] Gresham is a suburb (bedroom community) of the city of Portland, Oregon. Plaintiffs moved from Milwaukie, Oregon, to Gresham in February 2007. Both towns are in close proximity to Portland.

Longview, Puyallup, and Port Angeles, Washington, and also in various towns and cities in Minnesota, Montana, Arizona, North Dakota, Iowa, and Missouri. Plaintiffs also report that Sergey worked in Boardman, Oregon, which is more than 150 miles away from Plaintiffs' home town of Gresham. Plaintiffs deducted expenses they contend are business related. Those expenses include mileage, "travel" (lodging), "business expenses" consisting primarily of union dues and clothing, and meals and entertainment.

The primary focus of the parties' dispute is the mileage Sergey reported for travel to and from various job locations. Plaintiffs presented a mileage log at trial, and testified that the log was developed by transferring information Sergey would write on a piece of paper each time he traveled to a job location. Information on the piece of paper included the number of miles traveled, the date, and the destination. It is unclear to the court whether Sergey recorded the beginning and ending odometer reading, or wrote down the odometer reading when he was leaving home and then looked at the odometer when he arrived at his destination and calculated the number of miles. The pieces of paper were not submitted into evidence or available at the trial.

Defendant has multiple concerns with Plaintiffs' claimed travel expenses (mileage). Johnson stated that the log is unreliable; Johnson noted that he asked for it during the audit and believed Plaintiffs communicated to him that there was no log. Plaintiff Svetlana Ivanov (Svetlana) testified that she and Sergey were simply trying to explain to Johnson and his coworker during a meeting at the Department of Revenue that they did not have the log *with* them at that meeting, not that a log did not exist. When questioned by the court, Svetlana testified that they kept the log during the years at issue and found the log in the car. Svetlana further testified that the log was typically stored at the house; in other words, Sergey did not

carry it in the car and take it with him on his various business trips. Defendant is additionally concerned that Plaintiffs have not provided adequate substantiation to show that the various trips were for business, as opposed to pleasure. Johnson testified that he submitted a written request to Plaintiffs for all of the couple's federal tax information, including the associated schedules; presumably those documents would show the various sources of the income. Moreover, Johnson testified that, by way of example, Plaintiffs were "depreciating" the truck Sergey used for his business at 85 percent, but that all but 104 miles are claimed as business related travel.

## II. ANALYSIS

Before turning to the issues presented, certain principles applicable to those issues shall be summarized and the evidence on which Plaintiffs rely evaluated.

A.      *Certain Principles Applicable to the Issues Presented*

1.      *Business Travel Deductions*

The court is guided by the intent of the legislature to make Oregon's personal income tax law identical in effect to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals. ORS 316.007.[2] As a result, the legislature adopted, by reference in ORS 316.007(2), the federal definition for deductions, including those deductions allowed under section 162 of the IRC.[3]

The legal authority for the disputed deductions begins in IRC section 162(a), which provides in relevant part:

/ / /

/ / /

---

[2] All references to the Oregon Revised Statutes (ORS) are to 2007.

[3] All references to the IRC and accompanying regulations are to the 1986 code, and include updates applicable to 2007 and 2008.

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including –

"* * * * *

"(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business[.]"

For a deduction to be allowed as a business expense, it must be both ordinary and necessary to a taxpayer's trade or business. IRC § 162(a). "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, 2002 WL 236685 at * 2 (US Tax Ct) (2002) (*Boyd*) (internal citations omitted). The Oregon Tax Court has stated that "* * * an ordinary expense is one which is customary or usual. This does not mean customary or usual within the taxpayer's experience but rather in the experience of a particular trade, industry or community." *Roelli v. Dept. of Rev.*, 10 OTR 256, 258 (1986) (*Roelli*) (citing *Welch v. Helvering*, 290 US 111, 54 S Ct 8, 78 L Ed 212 (1933)); *Guinn v. Dept. of Rev.*, TC-MD No 040472D, WL 1089727 at *4 (Apr 19, 2005) (citing *Roelli*, 10 OTR at 258).

IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly provided for in the IRC. This court has recognized that "[t]he purpose of IRC § 162(a)(2) is to ameliorate the effects of business which requires taxpayers to duplicate personal living expenses," and that "[c]onsequently, courts must determine whether the claimed expense is actually required by the business rather than by the taxpayer's personal choice." *Harding v. Dept. of Rev.*, 13 OTR 454, 458 (1996) (*Harding*).

/ / /

The business expense deduction under IRC section 162(a)(2) includes deductions for mileage, meals, lodging and other travel expenses incurred while away from home in the pursuit of a trade or business. IRC § 162(a)(2). To obtain the travel expense deduction under IRC section 162(a)(2) requires that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey v. Dept. of Rev.*, 18 OTR 76, 80-81 (2004) (*Morey*), (citing *Finn v. Dept. of Rev.*, 10 OTR 393, 395 (1987)); *see also Comm'r v. Flowers*, 326 US 465, 470, 66 S Ct 250, 90 L Ed 203 (1946) (*Flowers*).

In order to determine whether an expense is incurred away from home, it is necessary to determine the location of the taxpayer's home. The word "home," as used in section 162(a)(2), generally refers to the vicinity of a taxpayer's principal place of employment and not to the place where the taxpayer's personal residence is located, if that personal residence is different from the principal place of employment. *Daly v. Comm'r*, 72 TC 190, 195, 1979 WL 3863 (1979) (citing *Foote v. Comm'r*, 67 TC 1, 4 (1976); *Kroll v. Comm'r*, 49 TC 557, 561-62 (1968)), *rev'd* 631 F2d 351 (4th Cir 1980), *rev'd* en banc 662 F2d 253 (4th Cir 1981); *Harding,* 13 OTR at 459. The general rule is subject to an exception: if the taxpayer's place of employment in another area is temporary as opposed to indefinite, the taxpayer's personal residence may be his tax home. *Peurifoy v. Comm'r*, 358 US 59, 60, 79 S Ct 104, 3 L Ed 2d 30 (1958) (*Peurifoy*); *Alami El Moujahid v. Comm'r*, 97 TCM (CCH) 1165, (2009) (*Alami*). Similarly, if a taxpayer does not have a principal place of employment, his permanent residence is his tax home for purposes of section 162(a)(2). *Johnson v. Comm'r*, 115 TC 210, 221, 2000 WL 1310661 at *7 (2000) (*Johnson*).

/ / /

A place of business is temporary if the employment is such that termination within a short period could be foreseen. *Mitchell v. Comm'r*, 74 TC 578, 581, 1980 WL 4458 (1980) (*Mitchell*); *see Michaels v. Comm'r*, 53 TC 269, 1969 WL 1647 (1969) (*Michael*). Whether employment is temporary or indefinite is a question of fact. *Peurifoy*, 358 US at 60–61. "In Rev Rul 93–86, 1993–2 CB 71, 72, the Commissioner ruled that under section 162(a)(2) if employment at a work location is realistically expected to last (and does in fact last) for one year or less, the employment will be treated as temporary in the absence of facts and circumstances indicating otherwise." *Daiz v. Comm'r*, 84 TCM (CCH) 148, 2002 WL 1796832 at *3 (US Tax Ct 2002) (*Daiz*).

For a taxpayer to be considered "away from home" within the meaning of section 162(a)(2), the taxpayer must be on a trip requiring sleep or rest. *United States v. Correll*, 389 US 299, 302-03, 88 S Ct 445, 19 L Ed 2d 537 (1967) (*Correll*). This avoids a case-by-case analysis of whether a taxpayer was away from home on a particular day. *See Correll*, 389 US at 302. The court applied the *Correll* rule in *Barry v. Comm'r*, 54 TC 1210, 1970 WL 2245 (1970), *aff'd* per curiam 435 F2d 1290 (1st Cir 1970):

> "* * * this Court applied the *Correll* rule in disallowing expenses for meals claimed by a taxpayer on 1–day business trips that extended from 16 to 19 hours during which the taxpayer rested briefly once or twice in his automobile but always returned home without incurring an expense for lodging. This Court held, in *Barry*, that the rest period required for the deductibility of travel expenses requires a rest of sufficient duration in time that necessitates the securing of lodging, and that a mere pause in the daily work routine does not satisfy the requirements of section 162(a)(2)."

*Frische v. Comm'r*, 80 TCM (CCH) 143, 2002 WL 1073327 at *3 (US Tax Ct 2000) (*Frische*). Therefore, to be deductible under IRC section 162(a)(2), travel expenses must be incurred while the taxpayer is working away from the taxpayer's tax home, which, depending on the circumstances, is either the taxpayer's principal place of business or his personal residence.

2.      *Burden of Proof and Substantiation Requirements*

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). A taxpayer is required to maintain records sufficient to establish the amount of any deduction claimed. IRC § 6001; Treas Reg § 1.6001–1(a).

During the audit examination stage, taxpayers must stand ready to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1). When, as in this case, the dispute moves to the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427. The burden in this case falls, at least initially, on Plaintiffs, as they are the party seeking affirmative relief. This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971) (citing *McPherson v. Cochran*, 243 Or 399, 404, 414 P2d 321 (1966)). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Finally, in an income tax appeal, this court has the statutorily authority to determine the correct amount of the deficiency (*i.e.,* tax), "even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue[.]" ORS 305.575. That is true, by statute, provided the taxpayer is afforded an opportunity to address any change in position of the department. *Id*.

In order for any of Plaintiffs' claimed business expenses to be deductible, such expenses must satisfy the requirements of both IRC section 162(a) and section 274(d). IRC section 274(d)

imposes stringent substantiation requirements for claimed deductions relating to traveling expenses. Under 274(d), deductions are disallowed unless substantiated by adequate records or by sufficient evidence corroborating the taxpayer's own statement. Even if an expense is otherwise deductible, the deduction may be denied if the substantiation to support the expense is insufficient. *See* Temp Treas Reg § 1.274-5T. A taxpayer is required to

> "* * * substantiate each element of an expenditure or use * * * by adequate records or by sufficient evidence corroborating his own statement. Section 274(d) contemplates that a taxpayer will maintain and produce such substantiation as will constitute proof of each expenditure or use referred to in section 274. Written evidence has considerably more probative value than oral evidence alone. In addition, the probative value of written evidence is greater the closer in time it relates to the expenditure or use.

Temp Treas Reg § 1.274-5T(c)(1). "To meet the 'adequate records' requirements of section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use specified in paragraph (b) of this section." Temp Treas Reg § 1.274-5T(c)(2)(i). Although a contemporaneous log is not required, "corroborative evidence * * * must have a high degree of probative value to elevate such statement and evidence to the level of credibility [of a contemporaneous record]." Temp Treas Reg § 1.274-5T(c)(1) (as amended in 2003); *see Daiz*, WL 1796832 at * 8.

For use of an automobile, the taxpayer must substantiate the following elements: (i) the amount of the business use (a ratio of business use to total use of the automobile for a period of time), (ii) the date of the use, and (iii) the business purpose of the use. Temp Treas Reg § 1.274-5T(b)(6).

In lieu of substantiating the actual amount of any expenditure relating to the business use of a passenger automobile, a taxpayer may use the applicable IRS standard mileage rate. *See*

Treas Reg § 1.274–5(j)(2); Rev Proc 2006–49, sec. 5.02, (applicable to Nov 1, 2006 through Nov 26, 2007); Rev Proc 2007–70, sec. 5.02, (applicable to Nov 27 through June 22, 2008); Rev Proc 2008–63, (applicable to June 23, 2008 through Nov 23, 2008); Rev Proc 2008–72, sec. 5.02, (applicable to Nov 24, 2008 through Dec 2, 2009).  The IRS standard mileage rate is to be multiplied by the number of business miles traveled.  *Id.*  The use of the IRS standard mileage rate establishes only the amount deemed expended with respect to the business use of a passenger automobile.  Treas Reg § 1.274–5(j)(2).  The taxpayer must still establish the amount (*i.e.*, the business mileage), the time, and the business purpose of each such use.  *Id.*

The elements that a taxpayer must prove with respect to an expenditure for traveling away from home on business, including expenditures for lodging and for meals are:  (1) The amount of each such expenditure, except that the daily cost of the traveler's own breakfast, lunch, and dinner may be aggregated; (2) the time of each such expenditure, *i.e.*, the dates of departure and return for each trip away from home and the number of days away from home spent on business; (3) the place of each such expenditure, *i.e.*, the destination or locality of travel, described by name of city or town or other similar designation; and (4) the business purpose of each such expenditure, *i.e.*, the business reason for the travel or the nature of the business benefit derived or expected to be derived as a result of travel. Temp Treas Reg § 1.274–5T(b)(2).

B.    *Evaluation of Evidence on which Plaintiff Relies*

Plaintiffs rely principally on certain credit card statements, mileage logs, gas and hotel receipts, pay stubs, Boilermakers Locals 500 and 104 union dues receipts, and their testimony. The credit card statements consist of monthly Mastercard statements covering the 2007 year and monthly Mastercard statements covering the 2008 year.  (Ptfs' 2007 & 2008 Exs 4.)  Plaintiffs

have also provided one Wells Fargo Visa statement showing charges from August 27, 2007, through September 23, 2007. (Ptfs' 2007 Ex 4 at 21.) The above described statements shall be referred to as Plaintiffs' credit card statements. Plaintiffs' credit card statements list the date, transaction description (which includes the name of the vender, and the city and state of each purchase), and the amount of the purchase. Plaintiffs have highlighted the expenses on the credit card statements relating to gas, meal, and lodging expenses.

Plaintiffs have two mileage logs, one for 2007 and one for 2008. The mileage logs contain the following headings: date, job location, odometer before, odometer after, and trip mileage. (Ptfs' 2007 & 2008 Exs 3.) Under the date heading, Plaintiffs listed the dates that Sergey was either in transit to or from, or working at, a specific job location. (*Id*.) Under the job location heading, Plaintiffs recorded the name of the employer, the city and state of the job location, and a brief description of the mileage incurred (*e.g.*, "from hotel to work" "came home[.]") (*Id*.) Under the headings of odometer before and odometer after, Plaintiffs recorded the starting odometer reading on that date, and the ending odometer reading on that date, and then noted the difference under the trip mileage heading. (*Id*.)

Johnson stated that the log is unreliable; Johnson noted that he asked for it during the audit and believed Plaintiffs communicated to him that there was no log. (*See* Def's Ex A-1.) However, Svetlana testified that they were simply trying to explain to Johnson and his coworker during a meeting at the Department of Revenue that they did not have the log *with* them, not that a log did not exist. When questioned by the court, Svetlana testified that they kept the log during the years at issue and found the log in the car. Svetlana further testified that the log was typically stored at the house.

/ / /

This court believes Svetlana's testimony is credible and finds that a mileage log was kept during the years at issue. This court finds that the mileage log is a reliable record.

Plaintiffs submitted pay stubs from Sergey's various employers for the 2007 and 2008 years. (Ptfs' 2007 & 2008 Exs 2.) The pay stubs list the pay period and amount of pay. (*Id.*) Most pay stubs also list the name and address of the employer. (*Id.*) In 2007, Sergey's pay stubs reflecting particular employment are dated from 1/22 to 3/4, 3/14 to 3/27, 4/7 to 4/27, 5/1 to 6/11, 9/9 to 9/30, and 9/30 to 10/20. (Ptfs' 2007 Ex 2 at 13-29.) In 2008, Sergey's pay stubs cover the time period, 2/23 to 3/14, 3/23, 4/17 to 4/18, 4/21 to 5/4, 4/25, 4/29 to 6/9, and 10/25 to 11/21. (Ptfs' 2008 Ex 2 at 13-30.) The above described statements shall be referred to as Plaintiffs' pay stub statements.

C.    *Application*

1.    *Vehicle Miles*

a.    *Daily Commuting*

Plaintiffs' 2007 and 2008 mileage logs contain the following entries of Sergey's daily commutes from his home in Gresham, Oregon, to various job locations:

2007

| Date | Job Site | Roundtrip Mileage from Gresham (Total for daily trips) |
|------|----------|-------------------------------------------------------|
| 1/02-1/08 | Longview, WA | 887.6 |
| 1/22-2/28 | Cascade, OR | 1,938.0 |
| 3/11-3/13 | Longview, WA | 308.4 |
| 3/26 | Puyallup, WA | 335.0 |
| 8/12-8/27 | Longview, WA | 634.0 |
| 11/22-12/16 | Longview, WA | 2,789.6 |
| | Total: | 6,892.6 |

/ / /

/ / /

/ / /

2008

| Date | Job Site | Roundtrip Mileage from Gresham (Total for daily trips) |
|------|----------|--------------------------------------------------------|
| 1/3 | Puyallup, WA | 338.0 |
| 2/20-2/25 | Longview, WA | 887.6 |
| 8/4 | Port Angeles, WA | 525.2 |
| | Total: | 1,750.8 |

(Ptfs' 2007 Ex 3 at 1-3, 7, 9-10; Ptfs' 2008 Ex 3 at 1, 4.)

The issue is whether Plaintiffs can deduct the mileage for the above referenced daily commutes.

Unlike deductions for mileage as business traveling expenses, commuting expenses are generally not deductible under IRC section 162(a)(2). *Fausner v. Comm'r*, 413 US 838, 93 S Ct 2820, 37 L Ed 2d 996 (1973); Treas Reg § 1.262–1(b)(5). Section 1.262-1(b)(5) of the regulations provides that commuting expenses are considered personal expenses. An exception exists for commuting expenses to some jobs that are temporary, as opposed to indefinite, in duration. *See Frederick v. United States*, 603 F2d 1292 (8th Cir 1979).

Revenue Ruling 99-7 provides several exceptions to the general rule that daily transportation expenses incurred in going between a taxpayer's residence and a work location are nondeductible commuting expenses:

> "(1) A taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *outside* the metropolitan area where the taxpayer lives and normally works. However, unless paragraphs (2) or (3) below applies, daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *within* that metropolitan area are nondeductible commuting expenses.

> "(2) If a taxpayer has one or more regular work locations away from the taxpayer's residence, the taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location in the same trade or business, regardless of the distance. (The Service will continue not to follow the *Walker* decision.)

"(3) If a taxpayer's residence is the taxpayer's principal place of business within the meaning of [IRC] § 280A(c)(1)(A), the taxpayer may deduct daily transportation expenses incurred in going between the residence and another work location in the same trade or business, regardless of whether the other work location is *regular* or *temporary* and regardless of the distance."

Rev Rul 99-7, 1999-1 CB 361 (emphasis in original).

Both sections (2) and (3) of Revenue Ruling 99-7 require a taxpayer to work in a given area or place regularly. *Porter v. DOR*, __ OTR __ (Oct 20, 2009) (slip op at 4) (*Porter*). Section (2) of the exceptions above requires a taxpayer to have "one or more regular work locations[.]" Rev Rul 99-7, 1999-1 CB 361. Section (3) requires that the taxpayer's residence is the taxpayer's principal place of business, as defined in IRC section 280A(c)(1)(A). *Id.* IRC section 280A(c)(1)(A) requires that a taxpayer's residence be used as a principal place of business on a "regular basis."

Sergey does not normally or regularly work in a single metropolitan area as evidenced by his mileage log and pay stubs. In 2007, Sergey traveled to 10 jobs in seven different states, and in 2008, Sergey traveled to nine jobs in seven different states. (Ptfs' 2007 & 2008 Exs 3.) Because Sergey did not work in any single area "regularly[,]" Plaintiffs cannot claim the deduction under sections (2) and (3) of Revenue Ruling 99-7. *Porter,* WL 3365847 at *2.* The inquiry must be on whether Plaintiffs may claim a deduction for commuting expenses under section (1).

To allow taxpayers a deduction for daily commuting expenses under section (1), this court must find "(1) that travel was to temporary work locations; (2) that taxpayer lived in a certain metropolitan area; and (3) that taxpayer 'normally' worked in the metropolitan area that he lived." *Id.* Sergey lived in the Portland metropolitan area. However, Sergey did not

/ / /

"normally" work in the Portland metropolitan area, as evidenced by Plaintiffs' submitted mileage log and pay stubs.

Plaintiffs therefore do not meet any of the exceptions for a daily commuting expense deduction under Revenue Ruling 99-7. Plaintiffs maintained a residence in the Portland metropolitan area, and there was no single metropolitan area where Sergey normally or regularly worked. Plaintiffs are denied a deduction for commuting expenses for the above referenced daily commuting expenses to Cascade, Oregon, and Longview, Puyallup, and Port Angeles, Washington.

b. *Business Travel Mileage*

Eliminating the daily commutes from Plaintiff's 2007 and 2008 mileage logs, the trips recorded in Plaintiffs' mileage logs are as follows:

2007

| Date | Job Site | Roundtrip Mileage from Gresham, OR | Total Roundtrip Mileage from Hotel to Work Site |
|---|---|---|---|
| 3/19-3/23 | Toledo, OR | 309.7 | 24.3 |
| 3/29-4/03 | Page, AZ | 2,581.6 | 13.2 |
| 4/6-4/29 | Clifton Hill, MO | 4,107.5 | 665.0 |
| 5/1-5/2 | Boardman, OR | 331.0 | 0 |
| 5/3-5/15 | Boardman, OR | 315.2 | 374.0 |
| 5/17-6/11 | Colstrip, MT | 2,100.2 | 1,749.6 |
| 6/14-6/15 | Port Angeles, WA | 513.4 | 0 |
| 6/16-6/25 | Port Angeles, WA | 513.4 | 82.4 |
| 8/5-8/12 | Port Angeles, WA | 525.2 | 41.2 |
| 9/2-9/30 | Stanton, ND | 2,769.9 | 1,903.9 |
| 9/30-10/22 | Becker, MN | 3,428.5 | 997.4 |
| 12/24-12/29 | Port Angeles, WA | 525.2 | 41.2 |
| | Total: | 18,020.8 | 5,892.2 |

/ / /

/ / /

/ / /

2008

| Date | Job Site | Roundtrip Mileage from Gresham, OR | Total Roundtrip Mileage from Hotel to Work Site |
|---|---|---:|---:|
| 2/26-3/15 | Kansas City, MO | 4,220.0 | 588.0 |
| 3/17-3/24 | Coal Creek, ND | 2,683.0 | 280.6 |
| 4/16-4/20 | Salix, IA | Portland to Sioux City— 1,656.2 | 87.0 |
| 4/20-4/25 | Omaha, NE | Sioux City to Omaha, NE—133.0 Omaha to Portland, OR—1,840.0 | 69.6 |
| 4/29-5/18 | Boardman, OR | 321.4 | 561.0 |
| 5/20-6/04 | Colstrip, MT | 2,100.2 | 1,047.2 |
| 8/10-8/26 | Port Angeles, WA | 525.2 | 144.2 |
| 10/25-11/23 | Platte City, MO | 3,544.2 | 719.1 |
| | Total: | 17,023.2 | 3,496.7 |

(Ptfs' 2007 Ex 3 at 2-10; Ptfs' 2008 Ex 3 at 1-6.) The question here is which, if any, of the above listed travel expenses are Plaintiffs entitled to deduct.

To obtain the travel expense deduction under IRC section 162(a)(2), "taxpayers must show that the expenses (1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey*, 18 OTR at 80-81; *see also Flowers*, 326 US at 470.

In order to determine if an expense is incurred "away from home[,]" it is necessary to determine the location of the taxpayer's home. If a taxpayer does not have a principal place of employment, his permanent residence is his tax home for purposes of section 162(a)(2). *Johnson* 115 TC at 221.

In 2007 and 2008, Sergey did not have a principle place of employment. There was no business location at which Sergey worked on a regular or normal basis. However, Sergey did have a permanent personal residence in Gresham, Oregon. Sergey purchased this residence in February 2007, and resided there with his wife. Sergey was primarily responsible for financially maintaining his personal residence and he had an ownership interest in his personal residence. Sergey also spent a substantial part of each year at his personal residence. Since Sergey did not

have a principal place of employment, his permanent residence in Gresham, Oregon, is his tax home for purposes of section 162(a)(2).

For a taxpayer to be considered "away from home" within the meaning of section 162(a)(2), the taxpayer must be on a trip requiring sleep or rest. *Correll*, 389 U.S. at 302-3. This has been understood to mean that "the rest period required for the deductibility of travel expenses requires a rest of sufficient duration in time that necessitates the securing of lodging, and that a mere pause in the daily work routine does not satisfy the requirements of section 162(a)(2)." *Frische*, WL 1073327 at *3. To be considered "away from home" for purposes of 162(a)(2), Sergey needed to be on a trip of such sufficient duration as to require him to secure lodging to rest.

In 2007, Sergey incurred expenses in traveling to Toledo, Oregon; Page, Arizona; Clifton Hill, Missouri; Boardman, Oregon; Colstrip, Montana; Port Angeles, Washington; Stanton, North Dakota; and Becker, Minnesota. (Ptfs' 2007 Ex 3.) Plaintiffs' 2007 mileage log provides the dates Sergey spent at each location. (*Id.*) It also provides the approximate mileage from his tax home in Gresham, Oregon, to each location. (*Id.*) Based on Plaintiffs' 2007 mileage log, this court concludes that each of those trips was of a sufficient duration as to require Sergey to secure lodging for sleep. Thus, Sergey was away from home for those trips.

In 2008, Sergey incurred expenses in traveling to Kansas City, Missouri; Coal Creek, North Dakota; Salix, Iowa; Omaha, Nebraska; Boardman, Oregon; Colstrip, Montana; Port Angeles, Washington; and Platte City, Missouri. (Ptfs' 2008 Ex 3.) Plaintiffs' 2008 mileage log provides the dates Sergey spent at each location. (*Id.*) It also provides the approximate mileage from his tax home in Gresham, Oregon, to each location. (*Id.*) Based on Plaintiffs' 2008

/ / /

mileage log, this court concludes that each of those trips was of a sufficient duration as to require Sergey to secure lodging for sleep. Thus, Sergey was away from home for those trips.

The taxpayer's tax home may remain in the area of his permanent personal residence so that he is "away from home" while stationed at the temporary job site. *Peurifoy*, 358 U.S. at 60. A place of business is temporary if the employment is such that termination within a short period could be foreseen. *Mitchell*, 74 T.C. at 581. "In Rev. Rul. 93–86, 1993–2 C.B. 71, 72 the Commissioner ruled that under section 162(a)(2) if employment at a work location is realistically expected to last (and does in fact last) for one year or less, the employment will be treated as temporary in the absence of facts and circumstances indicating otherwise." *Daiz,* WL 1796832 at *3.

Based upon Sergey's pay stubs for 2007 and 2008, none of Sergey's jobs lasted more than one year in duration. Neither Plaintiffs nor Defendant presented any facts to indicate that Sergey's jobs were not temporary. Accordingly, the places of business where Sergey worked were temporary. This means that Sergey's tax home did not change while Sergey worked at the temporary job sites.

Plaintiffs have met the three requirements for travel expenses under 162(a). Sergey's expenses are deductible, to the extent that they can be substantiated.

    c.  *Business Travel Mileage Substantiation*

For use of an automobile, the taxpayer must substantiate the following elements: (i) the amount of the business use (a ratio of business use to total use of the automobile for a period of time), (ii) the date of the use, and (iii) the business purpose of the use. Temp Treas Reg § 1.274-5T(b)(6) (2010).

/ / /

On Plaintiffs' 2007 income tax return, they claimed that Sergey drove his vehicle 30,805.7 business miles. (*See* Ptf's 2007 Ex 3 at 10.) His vehicle expenses were computed using the appropriate standard mileage rate for 2007 of 48.5 cents.

Plaintiffs' 2007 mileage log lists the dates and locations (city, state) for Sergey's job sites. For each date Sergey was traveling to or from, or working at a job site, he recorded the total mileage driven that day. (Ptfs' 2007 Ex 3.) Sergey's pay stubs show the name of the employer and the dates of pay. (Ptfs' 2007 Ex 2 at 13-29.) The dates of pay from a specific employer are consistent with Plaintiffs' mileage log:

| Date | Job Site | Pay stubs |
|------|----------|-----------|
| 3/19-3/23 | Toledo, OR | Dated 3/14-3/20, 3/21-3/27. |
| 3/29-4/03 | Page, AZ | No pay stubs provided. Mileage log states Plaintiff took a test at Local Union 4. |
| 4/6-4/29 | Clifton Hill, MO | From Enerfab, Inc., dated: 4/7-4/13, 4/14-4/20, 4/21-4/27. |
| 5/1-5/2 | Boardman, OR | From NAES Power Contractors in Boardman, OR., dated 5/1-5/7. |
| 5/3-5/15 | Boardman, OR | From NAES Power Contractors in Boardman, OR., dated 5/1-5/7, 5/8-5/14. |
| 5/17-6/11 | Colstrip, MT | From NAES Power Contractors in Colstrip, MT, dated 5/15-5/21, 5/22-5/28, 5/29-6/4, 6/5-6/11. |
| 6/14-6/15 | Port Angeles, WA | No pay stubs provided. |
| 6/16-6/25 | Port Angeles, WA | No pay stubs provided. |
| 8/5-8/12 | Port Angeles, WA | No pay stubs provided. |
| 9/2-9/30 | Stanton, ND | From Industrial Contractors, Inc., dated: 9/9, 9/16, 9/23, 9/30, 9/30. |
| 9/30-10/22 | Becker, MN | From Northern States Power Co., dated 9/30-10/6, 10/7-10/13, 10/14-10/20. |
| 12/24-12/29 | Port Angeles, WA | No pay stubs provided. |

The pay stubs provide corroborating evidence of a business purpose for Sergey's trips. Plaintiffs have substantiated the purpose of Sergey's trips to the extent that they have provided pay stubs evidencing his work at a job site at a particular location. Plaintiffs submitted pay stubs for Sergey's work at: Toledo, Oregon; Clifton Hill, Missouri; Boardman, Oregon; Colstrip, Montana; Stanton, North Dakota; and Becker, Minnesota. The court also holds that Sergey's trip

to Page, Arizona, was for the business purpose of taking a test at Local Union 4. The court accepts Plaintiffs' recorded mileage as a business expense for travel to those locations. The court also accepts Plaintiffs' recorded mileage between the places of lodging and job sites as a business expense.

Plaintiffs have provided no evidence to show a business purpose for Sergey's multiple trips to Port Angeles, Washington. It is possible that Sergey traveled to Port Angeles for pleasure, as opposed to business. Plaintiffs have the burden of proof to meet the elements for a business mileage deduction under Temporary Treasury Regulation section 1.274-5T(b)(6) (2010), which includes substantiation of the business purpose of the use of Sergey's automobile. Plaintiffs have failed to meet their burden for substantiating the purpose of Sergey's trips to Port Angeles, Washington.

As Plaintiffs have satisfied the adequate record requirement and provided evidence of a business purpose for some of the job sites and therefore substantiated this business expense, this court holds that Plaintiffs are entitled to the claimed deduction of 21,671 miles at the appropriate rate for 2007.[4]

On Plaintiffs' 2008 income tax return, Plaintiffs claimed Sergey drove his vehicle 22,299.5 business miles. (Ptf's 2008 Ex 3 at 6.) His vehicle expenses were computed using the appropriate standard mileage rate for 2008 of 50.5 cents from January 1 through June 30, 2008, and 58.5 cents from July 1 though December 31, 2008.

Plaintiffs' 2008 mileage log lists the dates and locations (city, state) for Sergey's job sites. (Ptfs' 2008 Ex 3.) For each date Sergey was traveling to, or traveling from, or working at a job site, he recorded the total mileage driven for that day. Sergey's pay stubs show the name of

---

[4] Plaintiffs submitted gasoline expenses for 2007 and 2008. However, because the court computed business mileage for 2007 and 2008 at the allowable mileage rate, actual automobile expenses are not deductible.

the employer and the dates of pay.  (Ptfs' 2008 Ex 2 at 13-30.)  The dates of pay from a specific

employer are consistent with Plaintiffs' mileage log:

| Date | Job Site | Pay stubs |
|---|---|---|
| 2/26-3/15 | Kansas City, MO | From Enterfab Inc., dated: 2/23-2/29, 3/1-3/7, 3/8-3/14. |
| 3/17-3/24 | Coal Creek, ND | From Industrial Contractors, Inc., dated: 3/23. |
| 4/16-4/20 | Salix, IA | From Enterfab Inc., dated: 04/17-04/18. |
| 4/21-4/25 | Omaha, NE | From Northwest Energy Maintenance LLC dated: 4/21-5/4, 4/25 |
| 4/29-5/17 | Boardman, OR | From NAES Power Contractors in Boardman, OR., dated: 4/29-5/5, 5/6-5/12, 5/13-5/19. |
| 5/20-6/04 | Colstrip, MT | From NAES Power Contractors in Colstip, MT., dated: 5/20-5/26, 5/27-6/2, 6/3-6/9 |
| 8/4 | Port Angeles, WA | No pay stubs provided. |
| 8/10-8/26 | Port Angeles, WA | No pay stubs provided. |
| 10/25-11/23 | Platte City, MO | From Enerfab, Inc.,  dated: 10/25-10/28, 10/25-10/31, 11/1-11/7, 11/8-11/14, 11/15-11/21 |

The pay stubs provide corroborating evidence of a business purpose for Sergey's trips.

Plaintiffs have substantiated the purpose of Sergey's trips to the extent that they have provided

pay stubs evidencing his work at a job site.  The court accepts the mileage claimed by Plaintiffs

to the extent that Plaintiffs have provided pay stubs for Sergey's work at the various job sites.

Plaintiffs submitted pay stubs for Sergey's work at: Kansas City, Missouri; Coal Creek, North

Dakota; Salix, IA; Omaha, Nebraska; Boardman, Oregon; Colstrip, Montana; and Platte City,

Missouri.

Plaintiffs have provided no evidence to show a business purpose for Sergey's trip to Port

Angeles, Washington.  Plaintiffs have the burden of proof to meet the elements for a business

mileage deduction under Temporary Treasury Regulation section 1.274-5T(b)(6) (2010), which

includes substantiation of the business purpose of the use of Sergey's automobile.  Plaintiffs

have failed to meet their burden for substantiating the purpose of Sergey's trip to Port Angeles,

Washington.

As Plaintiffs have satisfied the adequate record requirement and provided evidence of a business purpose for some of the job sites and therefore substantiated this business expenditure, this court holds that Plaintiffs are entitled to a mileage deduction of 15,587.2 miles at the appropriate rate for January 1 through June 30, 2008, and a mileage deduction of 4,263.3 miles at the appropriate rate for July 1 through December 31, 2008.

2.    *Travel (Lodging)*

The travel expense deduction under IRC section 162(a)(2) includes deductions for mileage, lodging, business expenses, and meals and entertainment.  To obtain the travel expense deduction under IRC section 162(a)(2) requires that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary."  *Morey*, 18 OTR at 80-81; *see also Flowers*, 326 US at 470.  While the law clearly allows for business deductions, meals and lodging are of such a personal nature that the law requires substantiating documentation.  IRC § 274(d).

In 2007, Plaintiffs included $1,500 of business travel expenses (lodging) on their Schedule A.  (Def's 2007 Audit Summary at D-1.)  For 2007, Plaintiffs have previously established, by providing copies of Sergey's pay stubs, a business purpose for Sergey's trips to Toledo, Oregon; Clifton Hill, Missouri; Boardman, Oregon; Colstrip, Montana; Stanton, North Dakota; and Becker, Minnesota.  This court also accepts that Sergey's trip to Page, Arizona, was related to a business purpose.   Additionally, Plaintiffs have previously established that Sergey's work at the various job locations was temporary and that Sergey was considered away from home while working at those business locations.

In 2008, Plaintiffs included $3,000 of business travel expenses (lodging) on their Schedule A.  (Def's 2008 Audit Summary at D-1.)  For 2008, Plaintiffs previously established,

by providing copies of Sergey's pay stubs, a business purpose for Sergey's trips to Kansas City, Missouri; Coal Creek, North Dakota; Salix, IA; Omaha, Nebraska; Boardman, Oregon; Colstrip, Montana; and Platte City, Missouri. Additionally, Plaintiffs have previously established that Sergey's work at the various job locations was temporary and that Sergey was considered away from home while working at those business locations.

Accordingly, Plaintiffs have met the requirements to claim business travel expenses under 162(a)(2) for tax years 2007 and 2008. Plaintiffs' claimed expenses for travel are deductible, to the extent that they can be substantiated.

Plaintiffs provided highlighted credit card statements to substantiate Sergey's lodging expenses in 2007 and 2008. (Ptf's 2007 Exs 1, 4; Ptf's 2008 Exs 1, 4.) Plaintiffs also provided three individual hotel receipts in 2008. (Ptf's 2008 Ex 5.) Sergey's Boilermakers Platinum Mastercard monthly statements provide the following dates, locations and amounts for his business lodging in 2007:

| Date | Location | Amount |
|------|----------|--------|
| 3/20/07 | Toledo, OR | $9.78 |
| 3/22/07 | Toledo, OR | $8.78 |
| 3/31/07 | Page, AZ | $17.52 |
| 4/15/07 | Moberly, MO | $308.70 |
| 4/18/07 | Moberly, MO | $132.30 |
| | Total: | 477.08 |

Sergey's Boilermakers Platinum Mastercard monthly statements and hotel receipts provide the following dates, locations and amounts for his business lodging in 2008:

/ / /

/ / /

/ / /

/ / /

| Date | Location | Amount |
|---|---|---|
| 2/28/08 | Blue Springs, MO | 567.71 |
| 4/17/08 | Sioux City, IA | 282.17 |
| 4/30/08 | Boardman, OR | 182.00 |
| 5/23/08 | Forsyth, MT | 462.31 |
| 11/1/08 | Platte City, MO | 303.03 |
| 11/15/08 | Platte City, MO | 303.03 |
| | Total: | 2,100.25 |

Plaintiffs have substantiated the lodging expense by providing monthly statements from Sergey's Boilermakers Platinum Mastercard which show the date, location and amount of the lodging expense. The dates of these lodging expenses coincide with the dates from Sergey's mileage logs and pay stubs. This court holds that Plaintiffs have substantiated lodging expenses in the amount of $477.08 in 2007 and $2,100.25 in 2008.

3.      *Business Expenses (Union Dues & Clothing)*

In 2007, Plaintiffs included $3,971 of business expenses on their Schedule A. (Def's 2007 Audit Summary at E-1.) The business expenses claimed were the payment of union dues. At trial, Defendant and Plaintiffs agreed that Plaintiffs are entitled to an IRC section 162 business expense in the amount of $2,927. The court accepts the parties' agreement.

In 2008, Plaintiffs included $2,500 of business expenses on their Schedule A. (Def's 2008 Audit Summary at E-1.) The business expenses claimed were the payment of union dues and medical expenses. At trial, Defendant and Plaintiffs agreed that Plaintiffs are entitled to an IRC section 162 business expense in the amount of $2,550. The court accepts the parties' agreement.

4.      *Meals*

To obtain the travel expense deduction under IRC section 162(a)(2) requires that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey,* 18 OTR at 80-81; *see also Flowers*,

326 US at 470. Meal expenses also must be substantiated by adequate records or by sufficient evidence corroborating the taxpayer's own statement. IRC § 274(d). Because of the personal nature of meal expenses, without substantiation of the amount of the expense, the time and place, and the business purpose, deductions cannot be allowed. *See* IRC § 274(d); *Harding*, 13 OTR at 461 (citing Temp Treas Reg § 1.274-5T(c) (1989)).

For a dispute in the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427. The burden in this case falls, at least initially, on Plaintiffs, as they are the party seeking affirmative relief. This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

Plaintiffs rely on credit card statements to substantiate the meal expenses. (Ptfs' 2007 & 2008 Exs 4.) Sergey's credit card statements list the date, transaction description including the city and state of each purchase, and the amount of the purchase. (*Id*.) Plaintiffs have highlighted expenses which they attribute to meal expenses incurred while Sergey was away from home on business. (*Id*.) Some of the highlighted vendors on the credit card statements include Chevron, Shell, Exxon Mobile, Kmart and Wal-Mart. (*Id*.) These vendors sell nonfood items in addition to food items. The credit card statements do not provide information to determine whether Sergey bought food or nonfood items from these vendors. Additionally, for some purchases, the amount of the purchase would suggest that Sergey purchased a snack, as opposed to a meal, and "[t]he cost of "snacks" is not an allowable business deduction." *Seeto v. Dept. of Rev.,* TC-MD No. 000038D, WL 454685 at *4 (March 23, 2001) (small claims).

On the basis of a review of the evidence, this court concludes that Plaintiffs have failed to adequately substantiate Sergey's alleged meal expenditures. Plaintiffs have not shown by a preponderance of the evidence that meals, and not snacks or other nonmeal items, were purchased. Plaintiffs thereby failed to meet their burden of proof. Accordingly, the court accepts Defendant's values for meal expenses of $212 in 2007 and $91 in 2008.

### III. CONCLUSION

In summary, Plaintiffs established business expenses in 2007 and 2008 for vehicle miles, travel (lodging), business expenses (union dues and clothing) and meals. Plaintiffs' expenses are deductible to the extent that they met the requirements of sections 162(a) and 274(d). In 2007, the following business expenses met the requirements of 162(a)(2) and were substantiated by Plaintiffs: 21,671 miles at the appropriate rate for 2007 vehicle mileage, travel expenses of $477.08, business expenses of $2,927, and meals expenses of $212.

For 2008, the following business expenses met the requirements of 162(a)(2) and were substantiated by Plaintiffs: vehicle mileage of 15,587.2 miles at the appropriate rate for January 1 through June 30, 2008, and 4,263.3 miles at the appropriate rate for July 1 through December 31, 2008, travel expenses of $2,100.25, business expenses of $2,550, and meals expenses of $91. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DECISION  TC-MD 101152C                                                                                    25

IT IS THE DECISION OF THIS COURT that Defendant shall recalculate Plaintiffs' 2007 and 2008 tax liability to conform with the court's determination.

Dated this ___ day of March 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on March 28, 2012. The Court filed and entered this Decision on March 28, 2012.*